## SZYSZLO v AKOWITZ

Docket No. 299570. Submitted December 13, 2011, at Detroit. Decided
    March 22, 2012, at 9:05 a.m. Leave to appeal denied, 492 Mich 857.
  Joseph Szyszlo filed a medical malpractice action in the Oakland
      Circuit Court against Leigh Akowitz, A. Heinrich, Mable Alverson,
      Trinity Health-Michigan, doing business as St. Joseph Mercy
      Hospital, Trinity-Health Michigan, doing business as St. Joseph
      Mercy Hospital Pontiac, Joffer Hussein Hakim, M.D., and Bloom-
      field Anesthesia, P.C. Szyszlo filed a bankruptcy petition in the
      United States Bankruptcy Court for the Eastern District of
      Michigan on July 10, 2006, approximately three months after a
      surgery from which the medical malpractice allegations arose. In
      September 2006, Szyszlo amended the bankruptcy petition to add
      the personal-injury claim arising out of the alleged medical mal-
      practice as an asset. Szyszlo listed the current market value of the
      claim as $15,000, and then on a separate form claimed maximum
      exemption of $18,450 against the claim for personal injury due to
      medical malpractice, with the value of the claim listed as un-
      known. Neither the trustee nor any creditor filed an objection to
      this exemption. On April 15, 2008, the bankruptcy trustee filed a
      report of no distribution in which she indicated there was no
      property available for distribution from the estate other than the
      exemptions claimed under the exemption law. She requested to be
      discharged from her duties as trustee. Szyszlo filed the instant
      medical malpractice claim on October 3, 2008, but the bankruptcy
      case was not closed by the bankruptcy court, and the trustee
      discharged, until May 13, 2009. Defendants thereafter filed sepa-
      rate motions for summary disposition arguing that Szyszlo lacked
      the legal capacity to assert the medical malpractice claim and that
      he should be judicially estopped from claiming damages in excess
      of $15,000. The circuit court, Edward Sosnick, J., granted defen-
      dants' motion concluding that Szyszlo lacked the legal capacity to
      sue on the claim because at the time the complaint was filed the
      bankruptcy estate was not closed. The circuit court reasoned that
      the bankruptcy estate retained its interest in the potential mal-
      practice lawsuit until the estate was closed on May 13, 2009.
      Szyszlo appealed and defendants cross-appealed.

  The Court of Appeals *held*:

1. Under 11 USC 522(d)(11)(D), a debtor may claim an exemption from inclusion in the bankruptcy estate for a payment on account of personal bodily injury. Unless a party in interest objects, the property claimed as exempt on a list is exempt. 11 USC 522(l). A trustee does not have to abandon the property as a prerequisite to the debtor claiming the exemption. Rather, abandonment is the method used by a trustee to relieve the estate of any property that is burdensome to the estate and that is of inconsequential value and benefit to the estate. However until and unless the trustee abandons the estate's interest in the lawsuit, any amounts recovered in the lawsuit above the amount of the statutory exemption would flow to the bankruptcy estate. A debtor still retains an interest in the lawsuit because the statutory exemption represents a present, substantial interest and provides the necessary standing to pursue the action. The circuit court erred by granting defendants' motion for summary disposition on the basis of lack of legal capacity to sue. Szyszlo had standing and was a proper party to bring this suit because he had an undisputed exemption for the medical malpractice claim. Szyszlo would also be entitled to any funds recovered in the medical malpractice suit that are in excess of the sum of administrative fees, exemptions and the debt owed by the estate.

2. Judicial estoppel applies when a party successfully and unequivocally asserts a position in a prior proceeding that is wholly inconsistent with the position taken in a subsequent proceeding. The circuit court properly concluded that Szyszlo was not estopped from bringing this medical malpractice action. The $15,000 amount he claimed as the market value of his medical malpractice claim was not inconsistent with the circuit court's jurisdictional limit amount of $25,000. The potential claim was listed as an asset in the bankruptcy filing in 2006 and proceedings were not begun in this case until nearly two years later. The market value of potential damages in a suit that had not yet been filed was discounted by the uncertainties associated with such a trial. It was appropriate for the market value to be claimed as $15,000, while the damages sought were in excess of $25,000. The listed $15,000 market value of the claim was not a statement of actual damages and was not an "unequivocal" statement of such damages. Szyszlo was accordingly not judicially estopped from seeking damages in excess of $25,000 in the medical malpractice claim.

3. Circuit courts have jurisdiction over cases in which $25,000 or more is in controversy. MCL 600.8301(1). The amount in controversy is based on the damages claimed. Under the version of

11 USC 522(11)(D) in effect in 2006, $18,450 was the maximum statutory exemption permitted in a personal bankruptcy petition. The circuit court had jurisdiction over Szyszlo's medical malpractice claim. If he recovered damages, Szyszlo would be entitled to the $18,450 as his exemption, plus any amount in excess of the amount necessary to satisfy his debts in the bankruptcy estate. Contrary to defendants' argument, the potential for recovering in excess of the $25,000 jurisdictional amount was sufficient to confer jurisdiction on the circuit court.

Reversed and remanded.

1. ACTIONS — STANDING IN BANKRUPTCY ACTIONS — STATUTORY EXEMPTIONS FROM INCLUSION IN BANKRUPTCY ESTATE — POTENTIAL LAWSUITS — PRESENT AND SUBSTANTIAL INTEREST.

Under 11 USC 522(d)(11)(D), a debtor may claim an exemption from inclusion in a bankruptcy estate for a payment on account of personal bodily injury; unless a party in interest objects, the property claimed as exempt on a list is exempt under 11 USC 522(*l*); a trustee does not have to abandon the property as a prerequisite to the debtor claiming the exemption; rather, abandonment is the method used by a trustee to relieve the estate of any property that is burdensome to the estate and that is of inconsequential value and benefit to the estate; however until and unless the trustee abandons the estate's interest in the lawsuit, any amounts recovered in the lawsuit above the amount of the statutory exemption would flow to the bankruptcy estate; a debtor still retains an interest in the lawsuit because the statutory exemption represents a present, substantial interest and provides the necessary standing to pursue the action.

2. ESTOPPEL — JUDICIAL ESTOPPEL — INCONSISTENT POSITION IN PRIOR PROCEEDING.

Judicial estoppel applies when a party successfully and unequivocally asserts a position in a prior proceeding that is wholly inconsistent with the position taken in a subsequent proceeding.

*Frederic M. Rosen, P.C.* (by *Frederic M. Rosen* and *Steffani Chocron*), and *Bendure & Thomas* (by *Mark R. Bendure*) for Joseph Szyszlo.

*Lipson, Neilson, Cole, Seltzer & Garin, P.C.* (by *Karen A. Smyth* and *Mark E. Phillips*), for Leigh Akowitz.

*Tanoury, Nauts, McKinney & Garbarino, P.L.L.C.* (by *Linda M. Garbarino* and *David R. Nauts*), for A. Heinrich, Mable Alverson, and Trinity Health-Michigan.

*Saurbier & Siegan, P.C.* (by *Marc D. Saurbier*), for Joffer Hussein Hakim, M.D., and Bloomfield Anesthesia, P.C.

Before: SHAPIRO, P.J., and WHITBECK and MURRAY, JJ.

PER CURIAM. Plaintiff appeals from the trial court's order granting defendants' motions for summary disposition and dismissing plaintiff's medical malpractice suit. The trial court found that at the time plaintiff filed suit, the sole party having an interest in the medical malpractice claim was the trustee of plaintiff's bankruptcy estate. Given this finding, the trial court held that plaintiff lacked the legal capacity to sue on the claim. Plaintiff appeals as of right. Defendants cross-appeal as of right, asserting that the trial court erred by rejecting their alternative argument that plaintiff, even if a proper party in interest, was judicially estopped from seeking damages in excess of $15,000, an amount less than the minimum required for circuit court jurisdiction. For the reasons set forth below, we reverse the trial court's conclusion that plaintiff was not a proper party in interest and affirm the trial court's conclusion that plaintiff was not judicially estopped from seeking damages in excess of the circuit court jurisdictional minimum. Accordingly, we reverse the order of summary disposition and remand for further proceedings.

## I. BACKGROUND

Plaintiff underwent a 10-hour surgery after sustaining multiple orthopedic injuries in a fall on April 11,

2006. Following the surgery plaintiff was found to be cortically blind.[1] The hospital discharge summary reported that "the blindness was not present prior to the operative intervention and the assumption was that it was related to positioning and or hypotension during the procedure." Plaintiff asserts that the defendant anesthesiologist and defendant nurse anesthetists were negligent by failing to properly position and reposition him during the surgery to allow for proper blood flow, and by failing to properly monitor and address his perioperative hypotension. Plaintiff claims that these failures caused his perioperative blindness.[2]

On July 10, 2006, about three months after the surgery, plaintiff filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan. On or about September 6, 2006, the petition was amended to add a potential medical malpractice claim as an asset. Under the heading "other personal property of any kind not already listed," the amended petition listed "claim for personal injury due to medical malpractice, *value unknown*." (Emphasis added.) The bankruptcy form also requested the "current market value of the debtor's interest in property," and this was listed as $15,000. On the portion of the form for the petitioner to list "property claimed as exempt," plaintiff listed a claimed exemption of $18,450[3] against the "claim for personal injury due to

---

[1] Cortical blindness is a loss of vision resulting from damage to the brain rather than damage to the eye itself. See *Stedman's Medical Dictionary* (26th ed), p 212.

[2] The affidavits of meritorious defense assert that defendants fully complied with the applicable standards of care and that the cause of plaintiff's perioperative vision loss cannot be known to within a reasonable degree of medical certainty.

[3] The maximum statutory exemption amount then permitted under 11 USC 522(11)(D).

medical malpractice, value unknown." Neither the trustee nor any creditor filed an objection to this exemption.

On April 15, 2008, the bankruptcy trustee filed a report of no distribution in which she stated, "I have made diligent inquiry into the whereabouts of property belonging to the estate; and . . . there is no property available for distribution from the estate over and above the exemptions claimed by the exempted law." In the report, the trustee "certif[ied] that the estate . . . has been fully administered" and requested that she be discharged from further duties as trustee. She later stated in an affidavit—apparently prepared as evidence for the instant case—that before filing the report of no distribution, she had "investigated the potential medical malpractice action" and had "made the determination that this claim was not worth pursuing on behalf of the bankruptcy estate."

On October 3, 2008, approximately one week before the expiration of the limitations period for the malpractice claim, plaintiff filed his complaint in circuit court. Two affidavits of merit were filed with the complaint; one was signed on September 25, 2008, and the other on October 1, 2008.

On May 13, 2009, about 13 months after the trustee had filed her report and the bankruptcy court entered a final decree stating that the case had been fully administered, the trustee was discharged, and the case closed.[4]

---

[4] On August 10, 2010, plaintiff's bankruptcy attorney was suspended from the practice of law for a period of three years, effective June 25, 2009, for professional misconduct including failure to adequately communicate with clients, failure to act with reasonable diligence and promptness in representing his clients, misappropriating monies and failing to safeguard client funds, and several other violations of the Michigan Rules of Professional Conduct.

In April 2010, defendants each moved for summary disposition, arguing that plaintiff did not have the legal capacity to sue on the medical malpractice claim and, further, that he should be judicially estopped from claiming damages in excess of $15,000.00. A hearing on the motion was held on July 14, 2010, and on July 22, 2010, the trial court issued its opinion.

## II. STANDARD OF REVIEW

We review de novo a trial court's summary disposition ruling. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The trial court based its ruling on a lack of capacity to sue, which is governed by MCR 2.116(C)(5). In reviewing such a ruling, " 'this Court must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties.' " *Aichele v Hodge*, 259 Mich App 146, 152; 673 NW2d 452 (2003), quoting *Jones v Slick*, 242 Mich App 715, 718; 619 NW2d 733 (2000). Questions of law are reviewed de novo. See *Hamed v Wayne Co*, 490 Mich 1, 8; 803 NW2d 237 (2011). Judicial estoppel is an equitable doctrine. *Opland v Kiesgan*, 234 Mich App 352, 365; 594 NW2d 505 (1999). Findings of fact supporting the trial court's decision are reviewed for clear error, and the application of the doctrine is reviewed de novo. *Webb v Smith (After Remand)*, 204 Mich App 564, 568; 516 NW2d 124 (1994).

### III. LEGAL ANALYSIS

#### A. LEGAL CAPACITY

The trial court held that plaintiff lacked the "legal capacity to sue on the claim" because at the time the complaint was filed, the bankruptcy estate had not been closed. Relying on 11 USC 554, the trial court found

that the bankruptcy estate retained its interest in the potential malpractice lawsuit until it was closed pursuant to the May 13, 2009 bankruptcy court order. Plaintiff makes three arguments on appeal. First, that because plaintiff claimed the statutory exemption under 11 USC 522(d)(11)(D) for the first $18,450 recouped from the lawsuit, and no objection to that exemption was filed, he retained a legal interest in the malpractice suit whether or not the estate had abandoned its interest.[5] Second, that the estate's interest in the malpractice claim was abandoned when the time for objection to the trustee's report of no distribution had passed[6] and that the closing of the bankruptcy case was not a condition precedent to abandonment. Third, that even if the estate's interest had to be abandoned for plaintiff to prosecute the malpractice suit—and it was not abandoned until May 13, 2009, when the court issued the final decree closing the case—plaintiff was a real party in interest by the time defendants filed their summary disposition motion in 2010 and thus, had lawful authority to "prosecute" the action as provided by MCR 2.201(B).

We conclude that at the time plaintiff filed suit, he was a real party in interest.[7] It is uncontested that plaintiff properly listed the potential lawsuit as an asset and was entitled to the exemption under 11 USC 522(d)(11)(D), which provides for an exemption for "a payment . . . on account of personal bodily injury. . . ." A claim for exemption is made in accordance with 11 USC 522(l), which provides:

---

[5] Although plaintiff raised this argument below, he did not argue it on appeal until the filing of his reply brief. Defendants were subsequently given an opportunity, by this Court's order, to brief the issue, however. Thus, the issue has been fully briefed by both parties.

[6] Fed R Bankruptcy Proc 5009(a).

[7] Accordingly, we need not address plaintiff's remaining arguments regarding the standing issue.

The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

Fed R Bankruptcy Proc 4003(b) provides that an objection must be filed "within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Plaintiff claimed an exemption for his medical malpractice claim for the maximum allowable under the statute and no objections to the exemption were filed. The validity of plaintiff's claimed exemption in the bankruptcy proceeding is not disputed here, and the United States Supreme Court has gone so far as to hold that even when a bankruptcy petitioner lacks a good faith basis for a claimed exemption, the failure of the trustee and creditors to timely object or seek an extension of time in which to do so still results in the relevant property being exempt. *Taylor v Freeland & Kronz*, 503 US 638, 642-645; 112 S Ct 1644; 118 L Ed 2d 280 (1992).

We find the Fourth Circuit's decision in *Wissman v Pittsburgh Nat'l Bank*, 942 F2d 867, 870 (CA 4, 1991), directly on point. In that case, petitioners, the Wissmans, listed a possible lawsuit against the eventual defendants as an asset of their bankruptcy estate. They also timely asserted their exemption for any value in the potential lawsuit up to the statutory maximum and no objections to the exemption were filed. Later, during the pendency of the bankruptcy case, the Wissmans filed the listed lawsuit. The defendant in that lawsuit filed a motion to dismiss on the ground that the petitioners lacked "standing to pursue the action with-

out the participation of, or the abandonment of the claim by, the bankruptcy trustee." The *Wissman* court rejected this argument, holding:

> "Unless a party in interest objects, the property claimed . . . is exempt." [11 USC 522(*l*)]. *The unequivocal language of the statute does not require abandonment by the trustee as a prerequisite to exemption by the debtor.* Abandonment is the method used by the trustee to relieve the estate of "any property . . . that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 USC § 554. *The trustee may refuse to abandon property that has value to the estate, but if the debtor is entitled by statute to an exemption in it, he may claim it without abandonment by the trustee. [Wissman, 942 F2d at 870 (emphasis added).]*

The Fourth Circuit concluded that "the district court erred in holding that abandonment by the trustee was a prerequisite . . . to the Wissmans' standing to pursue the action." *Id.*

The *Wissman* court also concluded that until and unless the trustee abandons the estate's interest in the lawsuit, any amounts recovered in the lawsuit above the amount of the statutory exemption would flow to the bankruptcy estate. *Id.* at 872; see *Schwab v Reilly*, 560 US ___; 130 S Ct 2652, 2668; 177 L Ed 2d 234 (2010). However, the court held that this did not eliminate the debtor's interest in the lawsuit because the statutory exemption to which the plaintiff was entitled, *"represents a present, substantial interest and provides the necessary standing for them to pursue the action." Wissman*, 942 F2d at 872 (emphasis added).[8]

---

[8] In the instant case, after plaintiff filed this cause of action the bankruptcy estate was formally closed and at that point, even by defendants' analysis, the estate's interest in the suit was abandoned. Thus, unless the trustee takes some action to reopen the estate, plaintiff will be entitled to the full proceeds from the cause of action.

This decision was followed in *In re Bottcher*, 441 BR 1, 4 (Bankr D Mass, 2010), where the bankruptcy court held:

> *Because the plaintiff has exempted the property and the first $16,500 of recovery on his claims, he is a real party in interest and has standing to bring this action. Wissman*, 942 F2d at 870. If the plaintiff is successful, the Chapter 7 Trustee will be entitled to receive a portion of any recovery over and above that amount. *Schwab v Reilly*, [560] US ___; 130 S Ct 2652, 2669; 177 L Ed 2d 234 (2010). [Emphasis added.]

In this case, having an undisputed exemption for the potential lawsuit, plaintiff had standing and was a proper party to bring this suit.[9] Moreover, the exemption was not the full amount of plaintiff's interest in the lawsuit. Any funds recovered in that suit in excess of the sum of administrative fees, exemptions and the approximately $65,000 debt owed by the estate, remained the property of plaintiff. The trial court erred by granting summary disposition based on the conclusion that plaintiff lacked the capacity to sue.

### B. JUDICIAL ESTOPPEL

Defendants cross-appeal, arguing that summary disposition should have been granted on the basis of the doc-

---

[9] Our recent decision in *Young v Independent Bank*, 294 Mich App 141; 818 NW2d 406 (2011) (Docket No. 299192) is inapposite, as in that case the petitioner had failed to claim an exemption for the relevant asset, and the panel never considered the effect of an undisputed exemption on the standing of a petitioner-plaintiff. Indeed, in *Young*, the plaintiff had failed to list the asset altogether in her bankruptcy pleadings. Since a non-listed asset cannot be abandoned by the trustee, and the *Young* plaintiff had no exemption to rely upon, she did not have standing. Here, while we have not reached the question whether the trustee abandoned the estate's interest in light of the report of no distribution, it is clear that because plaintiff listed the asset and claimed the exemption without objection, the question of the instant plaintiff's standing to proceed turns on facts wholly absent from *Young*.

trine of judicial estoppel. For judicial estoppel to apply, a party must have successfully and "unequivocally" asserted a position in a prior proceeding that is "wholly inconsistent" with the position now taken. *Paschke v Retool Indus*, 445 Mich 502, 509-510; 519 NW2d 441 (1994). Plaintiff argues, and the trial court found, that plaintiff's statement of the "market value" of his claim in the bankruptcy schedule was not wholly inconsistent with the jurisdictional limits amount set forth in the circuit court action. We agree, and also conclude for the reasons discussed below, that plaintiff did not, in the course of his bankruptcy, make an "unequivocal" statement of the damages that could be sought in a lawsuit.

The jurisdictional limits would be the "amount in controversy." While "amount in controversy" has not been expressly defined in Michigan case law, *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 475; 628 NW2d 577 (2001), indicates that it is based on the damages claimed. By contrast, the market value of the suit is the amount a third party would reasonably pay for the asset at the time the petition is filed. This distinction was cogently discussed at length in *In re Polis*, 217 F3d 899, 902-903 (CA 7, 2000), where the Seventh Circuit stated as follows in an opinion by Judge Posner:

> The Code provides that the "value" of property sought to be exempted "means fair market value *on the date the petition for bankruptcy was filed*, 11 USC § 522(a)(2), unless the debtor's estate acquires the property later. On the date Polis filed her petition in bankruptcy, she had not yet sued Getaways, but the legal claim on which the suit was based, having arisen out of a transaction . . . that had occurred before the petition was filed, was already "property" of the debtor and hence of the debtor's estate in bankruptcy. . . .

Although we may assume . . . that . . . [the] claim is not assignable and so cannot be the subject of a "market" transaction in the literal sense, that is irrelevant. . . . Legal claims are assets whether or not they are assignable, especially when they are claims for money; as a first approximation, the value of Polis's claim is the judgment that she will obtain if she litigates and wins multiplied by the probability of that (to her) happy outcome. That is roughly how parties to money cases value them for purposes of determining whether to settle in advance of trial. . . .

The possibility that the debtor will obtain a windfall as a consequence of the exemptions recognized by the Bankruptcy Code arises from the fact that the date of valuation of an asset for purposes of determining whether it can be exempted is the date on which the petition for bankruptcy is filed; it is not a later date on which the asset may be worth a lot more. Often property appreciates in a wholly unexpected fashion. A lottery ticket that turns out against all odds to be a winner is merely the clearest example. A debtor who exempted a painting thought to be worthless in a market sense, having a purely sentimental value, might discover the day after his discharge from bankruptcy that it had suddenly increased in value because other paintings by the artist had just been bought by the Metropolitan Museum of Art; the creditors could not reach it, provided that until then its fair market value had in fact been slight. Common stock that had traded at $100 a share on the date the petition for bankruptcy was filed might a month later be worth $1,000, and again the creditors would be out of luck if the debtor had exempted her shares by claiming the personal property exemption for them. And so it is with a legal claim. It might when it first accrued have seemed so "far out" that its fair market value would be well within the limits of the exemption, and yet—such are the uncertainties of litigation—it might turn into a huge winner.

This feature of the Code's valuation scheme should not be thought a disreputable loophole. If the assets sought to be exempted by the debtor were not valued at a date early in the bankruptcy proceeding, neither the debtor nor the

creditors would know who had the right to them. So long as the property did not appreciate beyond the limit of the exemption, the property would be the debtor's; if it did appreciate beyond that point, the appreciation would belong to the creditors, who thus might—if they still remembered their contingent claim to the property—reclaim it many years after the bankruptcy proceeding had ended. The framers of the Bankruptcy Code could have made ineligible for exemption property that has an unusual propensity to fluctuate in value, thus reserving windfall gains to the creditors; but they did not do so, perhaps because of the difficulty of defining the category or allocating its fruits across creditors. An alternative would be to keep the bankruptcy proceeding open indefinitely; the objections are self-evident.

The need in valuing an asset in advance to adjust for the uncertainty that its potential value will be realized is the key to the mistake made here by the bankruptcy and district courts. When there is uncertainty about whether some benefit, here an award of money in a class action suit, will actually be received, the *value* of the (uncertain) benefit is less than the *amount* of the benefit if it is received. A *claim* for $X is not worth $X. A 50 percent chance of obtaining a $1,000 judgment is not worth $1,000. [Citations omitted.]

In the instant case, at the time plaintiff amended his bankruptcy filing to include the claim, no suit had been filed. Indeed, there is no evidence that at the time the potential claim was listed any medical malpractice attorney had agreed to review the potential claim, let alone file and prosecute the lawsuit. The claim was listed as an asset in September 2006. It was not until nearly two years later that a notice of intent was mailed. At the time the asset was listed, therefore, its market value was the amount of damages that would be awarded upon a successful jury trial, discounted by the likelihood that (a) no attorney would agree to review the case; (b) after review, the attorney would decline to

pursue it;[10] (c) once an attorney had agreed to pursue the case, he or she would not be able to find qualified experts to support the case with affidavits of merit;[11] (d) plaintiff would run afoul of any of the various procedural hurdles relevant to medical malpractice cases; (e) direct evidence of medical negligence, even if it occurred, would not be available given that the events all took place in the operating room while plaintiff was unconscious; (f) a jury would reach a no cause of action verdict; (g) non-economic damages would be capped by law; (h) reductions for offsets for collateral source payments would reduce the economic damages; (i) the doctor would not have sufficient insurance to satisfy a judgment; (j) the judgment would be overturned on appeal; and (k) the extent to which the amount ultimately collected would be reduced by costs and attorney fees. Thus, it was entirely consistent for plaintiff to list the market value of his claim as $15,000 while claiming damages in excess of $25,000. The listed market value was not a statement of actual damages from the alleged malpractice and so could not be an "unequivocal" statement of such damages. Defendants have not presented any evidence to establish that the market value of plaintiff's claim was understated in the bankruptcy proceeding and the trustee, having attested that she investigated the malpractice claim before issuing her report of no distribution, concluded that the market value was accurate. Thus, defendants' claim of judicial estoppel fails.

Defendants also argue that the $18,450 exemption is the limit of what plaintiff could recover at the time the

---

[10] At the hearing below, plaintiff's counsel asserted that plaintiff's potential malpractice case had been turned down by two malpractice attorneys.

[11] The two affidavits of merit filed by plaintiff were not signed by experts until a few days before the filing of the suit.

lawsuit was filed, and that he therefore did not meet the circuit court jurisdictional requirement of $25,000 or more in controversy. MCL 600.8301(1). Defendants, relying on *Schwab*, 560 US ___; 130 S Ct 2652, reason that any damages beyond the exemption that plaintiff might otherwise be entitled to remained the property of the bankruptcy estate, and therefore the amount in controversy could not be greater than $18,450. However, defendants' reliance on *Schwab* is misplaced. *Schwab* dealt only with the bankruptcy trustee's ability to liquidate an asset. It did not involve the ability of a debtor to bring suit prior to conclusion of his bankruptcy case. Further, as noted above, the bankruptcy estate would only claim enough of the recovery to satisfy plaintiff's debts. That is, there are three layers of possible recovery. The first layer of up to $18,450 would go to plaintiff via the exemption. The second layer of a little less than $65,000 would go to the estate to settle plaintiff's debts. A third layer composed of any excess would then go to plaintiff. Therefore, defendants' argument that plaintiff cannot recover more than $18,450 is incorrect.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

SHAPIRO, P.J., and WHITBECK and MURRAY, JJ., concurred.