# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID KIRCHER,

       Plaintiff-Appellant,

v

CHARTER TOWNSHIP OF YPSILANTI,
RONALD FULTON, RUTH A. JAMNICK, and
BARNES & BARNES PROPERTIES,

       Defendants-Appellees.

UNPUBLISHED
July 14, 2016

No. 325098
Washtenaw Circuit Court
LC No. 07-000719-CC

Before: OWENS, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right an October 3, 2014 order denying his motion to reopen this case. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This is the third appeal arising out of a series of disputes between plaintiff and defendant Ypsilanti Charter Township (hereinafter defendant Township). See *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251; 761 NW2d 761 (2008) (*Kircher I*); *Ypsilanti Charter Twp v Kircher*, unpublished opinion per curiam of the Court of Appeals, issued June 9, 2011 (Docket No. 292661) (*Kircher II*).

In October 2004, Washtenaw County authorities discovered that there was a sewage backup at an apartment complex known as Eastern Highlands. At the time, plaintiff owned the apartment complex. Authorities determined that plaintiff and/or his agents were pumping raw sewage from a containment area into the Huron River. *Kircher I*, 281 Mich App at 255. The trial court entered an ex-parte temporary restraining order enjoining plaintiff from continuing to pump raw sewage in the river and authorizing defendant Township to enter the property to abate any immediate dangers. *Id.* at 255-256. The trial court thereafter declared Eastern Highlands a public nuisance and directed defendant Township to take reasonable steps to abate the nuisance. *Id.* at 256. Upon doing so, defendant Township discovered numerous other code violations. *Id.* at 257-258. The court then declared Eastern Highlands a public nuisance, directed plaintiff to install smoke detectors, fire extinguishers, and fire hydrants, and ordered plaintiff to complete all other requisite repairs as set forth in the defendant Township's inspection reports. *Id.* at 259-

-1-

260. Disregarding the court's directives, plaintiff refused to comply with the order. *Id*. at 260-261.

Given his continuing refusal to comply, the trial court then entered an order appointing "McKinley Properties or such other party as the township shall choose" as receiver. *Kircher I*, 281 Mich App at 262. The receivership was to last until the public nuisance was abated; the receiver was directed "to make the premises economically viable." *Id*. After plaintiff hired an attorney and moved for reconsideration, the trial court entered an order that more precisely defined the receiver's duties and responsibilities. *Id*. at 262-263. Shortly thereafter, McKinley Properties indicated that it did not want to serve as receiver and the trial court approved the defendant Township's request for defendant Barnes & Barnes Properties (Barnes) to be appointed as receiver. *Id*. at 263. The receiver then sought, and the trial court ordered, $1,702,480.70 to be paid by plaintiff to the receiver for the repairs made to Eastern Highlands. *Id*. at 264-267.

Approximately six months later, Barnes requested, and the trial court ordered, plaintiff to pay $48,614.82 for attorney fees and $12,935.40 in costs. *Kircher I*, 281 Mich App at 267. After plaintiff refused to comply with the order, Barnes commenced proceedings to sell Eastern Highlands. *Id*. at 268. Following a Sheriff's sale, Barnes acquired title to the complex. *Id*. Plaintiff appealed, and while this Court found the majority of his arguments meritless, the Court remanded for further proceedings to determine the appropriateness of Barnes' claimed expenditures. This Court also concluded that the trial court erred in permitting Barnes to charge a 25-percent mark-up on all expenditures. *Id*. at 281. Additionally, the Court concluded that the trial court erred in granting the receiver a lien against Eastern Highlands, in allowing the receiver to foreclose that lien, and in confirming the judicial sale of the property. *Id*. at 281-285. Thus, it also vacated the lien imposed by the trial court. *Id*. at 284-285.

On remand, the trial court entered an order granting $2,259,786.09 to Barnes. *Kircher II*, unpub op at 1. Plaintiff again appealed, arguing that the trial court's order was based on inadmissible evidence and was grossly excessive because it included fees for unnecessary expenses and an improper markup. *Id*. On appeal, this Court rejected the majority of plaintiff's arguments, but again remanded the case to the trial court with direction to "recalculate its award after subtracting any expenses that were already disallowed by this Court's previous opinion." *Id*.

In 2008, while plaintiff's appeal in *Kircher I* was pending, he commenced the instant proceeding, filing an inverse condemnation claim against the Township, Ruth A. Jamnick (the Township supervisor), Ronald Fulton (the Township building inspector), and Barnes. Plaintiff alleged that "[t]he taking by receivership was not for a public purpose, but was for the purpose of transferring ownership from one private owner who is disfavored by Township Defendants to another private owner who is favored by Township Defendants." Plaintiff argued that the taking of Eastern Highlands constituted an inverse condemnation, a due process violation, and a trespass.

On June 10, 2008, the case was stayed, pending the outcome of plaintiff's motion to disqualify certain circuit court judges. Following a denial of plaintiff's motion, plaintiff applied for leave to appeal in this Court, which was denied on February 26, 2009. *Kircher v Charter*

*Twp of Ypsilanti (Kircher III)*, unpublished order of the Court of Appeals, entered February 26, 2009 (Docket No. 288289). Thereafter, there was no activity in this case from February 2009 until August 2014, and the docket sheet indicates that the case was administratively closed.

In the meantime, plaintiff filed for bankruptcy on February 8, 2012, in the United States Bankruptcy Court for the Eastern District of Michigan. Following the proceeding, on August 25, 2014, plaintiff moved to reopen this case pursuant to 11 USC § 350. Plaintiff asserted that the Bankruptcy Court did not include the instant case as an asset of the estate, and, therefore, plaintiff was entitled to reopen the case.

In response, defendants the Township, Jamnick, and Fulton[1] responded, arguing that plaintiff lacked standing as he no longer owned the property in question and that plaintiff failed to preserve his claim by failing to disclose the claim as an asset during the bankruptcy proceeding. In their response, defendants attached schedules of assets that plaintiff filed in Bankruptcy Court. In the schedules, there was no mention of the instant case, other pending litigation, or anything related to an inverse condemnation claim.

On October 1, 2014, the circuit court denied plaintiff's motion to reopen the case, holding as follows:

> Plaintiff did not list the above titled pending case in his bankruptcy schedules. The bankruptcy Trustee issued his Final Report Account and Distribution Report on March 26, 2014. The U.S. Bankruptcy Court . . . closed the case on April 28, 2014. The Trustee's report is void of any mention of this pending action. Plaintiff's argument that "the Bankruptcy Trustee did not include the inverse condemnation claims presented in this action as an asset of the estate and those bankruptcy proceedings are concluded" is disingenuous. The Bankruptcy Court did not include the claims because Plaintiff failed to list the claims on his bankruptcy schedule.
>
> 11 USC 521(a)(1)(B)(i) requires that the debtor in bankruptcy must file a complete schedule of assets and liabilities. Causes of action are among the assets that must be disclosed on such a schedule. []Plaintiff is barred by judicial estoppel from asserting a claim that should have otherwise been addressed during the party's bankruptcy proceeding.

Thereafter, plaintiff moved for reconsideration and attached an email purportedly from his bankruptcy attorney wherein the attorney stated as follows:

> I looked at the schedules and I do not see that we listed Kircher v Charter Township Case No. 07-719-CC. We did however list in the 'assets' portion of the schedules (Schedule 'B') various actions against the fire Marshall and the Township which would seem to include this case.

---

[1] Barnes did not respond to plaintiff's motion.

-3-

The trial court denied plaintiff's motion for reconsideration for failure to show palpable error. This appeal ensued.

## II. ANALYSIS

Apart from citing legal authority in a preface, plaintiff's entire appellate argument consists of the following paragraph:

The defendant [sic] listed the asset as a cause of action "for the taking of Eastern Highlands" in schedule B, personal property continuation sheet, with all the causes of action. Exhibit one. The trustee did not choose to administer the claim despite the encouragement of the defendant [sic].

In addition, for the first time on appeal, plaintiff includes a copy of a document, which, according to plaintiff, is a copy of a portion of his "Schedule B" filing in bankruptcy court. The copy shows item number 31 as "Claims & Counterclaims for inverse taking and violation of due process" against defendants. Notably, this document conflicts with the Schedule B that defendants submitted in the lower court, which did not reference any claims or counterclaims and did not include an item numbered "31".

Plaintiff essentially asserts without further elaboration that he listed this lawsuit as an asset during the bankruptcy proceedings and that the bankruptcy trustee "did not choose to administer the claim." Plaintiff's argument amounts to nothing more than the assertion of a position unsupported by the record and devoid of legal reasoning. See *Wilson v Taylor*, 457 Mich 232, 242; 577 NW2d 100 (1998) (quotation marks omitted) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") Nevertheless, we have addressed what appears to be the substance of plaintiff's argument and determined that it lacks merit.

The interpretation and application of a court rule is reviewed de novo as a question of law. *Cowles v Bank West*, 476 Mich 1, 13; 719 NW2d 94 (2006). Likewise, whether judicial estoppel is applicable is also reviewed de novo. *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012). Findings of fact are reviewed for clear error. *Id*. "A trial court's findings are considered clearly erroneous where [the Court is] left with a definite and firm conviction that a mistake has been made." *Webb v Smith (After Remand)*, 204 Mich App 564, 568; 516 NW 2d 124 (1994).

This Court has previously explained as follows:

A debtor loses all rights to his or her property when he or she files for bankruptcy. 11 USC 541(a). A party filing for bankruptcy must list all of his or her assets on the bankruptcy schedule, 11 USC 521(a)(1), including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 USC 541(a)(1). "[I]t is well established that the interests of the debtor in property include causes of action." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (CA 6, 1988) (quotation marks and citations omitted). Moreover, "the right to

-4-

pursue causes of action formerly belonging to the debtor . . . vests in the trustee for the benefit of the estate. The debtor has no standing to pursue such causes of action." *Id.* (quotation marks and citation omitted). The debtor can only bring suit on a vested asset if the trustee abandons it or the court gives permission."

*Furthermore, an asset cannot possibly be abandoned by the bankruptcy trustee where it was not listed as an asset during the bankruptcy proceedings.* []A cause of action that is known about and filed before the filing of bankruptcy is an asset and properly belongs to the bankruptcy estate whether or not it was listed on the schedule. [*Young v Ind Bank*, 294 Mich App 141, 143-144; 818 NW2d 406 (2011) (quotation marks and citations omitted) (emphasis added).]

In this case, it cannot be disputed that plaintiff knew of his inverse condemnation claim at the time that he filed for bankruptcy. Therefore, because plaintiff knew of the challenge, the claim belongs to the bankruptcy estate. *Young*, 294 Mich App at 144. Thus, plaintiff's only means of saving the claim was by permission of the Bankruptcy Court or abandonment by the trustee. *Id*. at 143-144. It is undisputed that the Bankruptcy Court did not give plaintiff permission to pursue the claim; indeed, the lower court record supports that the Bankruptcy Court was not aware of the claim. In addition, the lower court record shows that the claim was not listed as an asset and therefore it could not be abandoned. *Id*. Here, the only evidence in the lower court record regarding the bankruptcy disclosures shows that plaintiff did not list the inverse condemnation claim. To the extent plaintiff presents a conflicting portion of Schedule B on appeal, that document was not presented to the trial court and cannot be considered on appeal. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.") In short, because plaintiff did not obtain permission from the Bankruptcy Court to pursue the inverse condemnation claim and because the claim was not listed and therefore could not be abandoned, plaintiff does not have standing to raise the claim. *Young*, 294 Mich App at 144.

Moreover, because plaintiff failed to list this claim as an asset during the bankruptcy proceedings, judicial estoppel bars plaintiff's claim. *Spohn v Van Dyke Pub Schs*, 296 Mich App 470, 479; 822 NW2d 239 (2012). Judicial estoppel, an equitable doctrine, "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id*. (citation and internal quotation marks omitted). In the context of bankruptcy cases, a finding of judicial estoppel requires the following: (1) a plaintiff takes a position that is contrary to one he or she asserted during the bankruptcy proceedings; (2) the Bankruptcy Court adopted the contrary position as part of the final disposition; and (3) a plaintiff's omission was not the result of mistake or inadvertence. *Id*. at 480-481. The lower court record supports that all three requirements for judicial estoppel are satisfied. As noted, plaintiff did not disclose the inverse condemnation claim as an asset, the Bankruptcy Court did not administer the lawsuit, and there is nothing to support a conclusion that plaintiff's failure to disclose was the result of mistake or inadvertence. Accordingly, plaintiff is judicially estopped from asserting the claim and the trial court did not err in denying his motion to reopen the case. *Id*. at 481-488.

Finally, to the extent plaintiff attempts to raise in the statement of facts section of his brief on appeal various other arguments, such as those relating to alleged due process violations, we decline to address those arguments as they were not raised in the statement of questions presented. MCR 7.212(C)(5); *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 309; 600 NW2d 664 (1999). Furthermore, these arguments are no different than those raised in plaintiff's previous appeals relating to this dispute, and, as this Court has previously recognized, the Court is bound by its previous decisions in this matter under the law-of-the-case doctrine. *Kircher II*, unpub op at 4-5, citing *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

Affirmed. Having prevailed in full, defendants may tax costs. MCR 7.219(A).

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien