*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SALEEM BIN SHAKOOR and TASLEEM
SALEEM,

UNPUBLISHED
August 18, 2022

Plaintiffs-Appellants,

v

No. 357176
Oakland Circuit Court
LC Nos. 2019-177304-CZ;
2019-178321-CZ

TCF NATIONAL BANK,

Defendant-Appellee,

and

COUNTY OF OAKLAND,

Defendant.

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendant[1] in these consolidated actions involving a foreclosure of real property. On appeal, plaintiffs argue that (1) the trial court erred by granting defendant's motion for summary disposition on the basis that plaintiffs' claims were barred by the doctrine of judicial estoppel, (2) they asserted justiciable causes of action, and (3) equity requires consideration of their claims of fraud and forgery. We affirm.

## I. BACKGROUND

---

[1] Defendant TCF National Bank is the successor in interest by merger to Chemical Bank, against whom the complaints in these actions were originally filed. Huntington National Bank is the successor in interest by merger to TCF.

This case arises from the 2019 foreclosure sale of real property located at 5045 Karschi Street in West Bloomfield. Plaintiffs filed two separate actions asserting various claims challenging the calculation of their mortgage balances and interest and the manner of the foreclosure proceedings. Defendant moved for summary disposition in both cases, arguing, *inter alia*, that plaintiffs' claims were barred by the doctrine of judicial estoppel because plaintiffs failed to disclose their claims in their prior bankruptcy cases. The trial court granted defendant's motions on the basis of judicial estoppel. Plaintiffs subsequently filed a motion for reconsideration and a motion for relief from judgment, which the trial court denied.

## II. JUDICIAL ESTOPPEL

Plaintiffs contend that the trial court erred by granting summary disposition in favor of defendant on the basis of judicial estoppel. We disagree.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012). This Court also reviews de novo the trial court's application of equitable doctrines, such as judicial estoppel. *Id*. The trial court granted summary disposition under MCR 2.116(C)(5), which applies when a party "lacks the legal capacity to sue." "In reviewing such a ruling, this Court must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties." *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012) (quotation marks and citations omitted).

"Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn*, 296 Mich App at 479 (quotation marks and citations omitted). "Under the 'prior success model' of judicial estoppel, 'a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding.' " *Id*. at 480 (citation omitted). In order to support a finding of judicial estoppel in cases involving bankruptcy proceedings, the court must find:

(1) the plaintiff assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the plaintiff's omission did not result from mistake or inadvertence. [*Id*. at 480-481 (cleaned up).]

With regard to the first requirement, the failure to include a claim in a bankruptcy petition satisfies this requirement. *Id*. at 481. A debtor is required to disclose all potential causes of action in the bankruptcy petition. *Id*. The duty to disclose is continuing and requires the amending of the petition to include any potential claims. *Id*. at 482. With regard to the second requirement, "[t]o establish 'adoption,' it must only be shown that the bankruptcy court confirmed [the plaintiff's] plan," which did not refer to the potential claim. *Id*. at 483.

With regard to the third requirement, "to determine if a plaintiff's omission constituted 'mistake or inadvertence,' courts consider whether '(1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an

absence of bad faith.' " *Id.* (citation omitted). Regarding the lack of knowledge, this Court considers whether the events comprising the substance of the claim occurred before the bankruptcy petition was filed. *Id.* at 484. "A debtor need not know all the facts or even the legal basis for the cause of action; rather, *if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action*, then that is a known cause of action such that it must be disclosed." *Id.* (quotation marks and citation omitted; emphasis added). With regard to concealment, "a presumption regarding a motive to conceal exists because it is always in a Chapter 13 petitioner's interest to minimize income and assets in order to secure payment directly rather than to the debtor's estate." *Id.* at 485 (cleaned up). Finally, with regard to bad faith, "courts will look, in particular, at the plaintiff's attempts to advise the bankruptcy court of the omitted claim. More specifically, courts primarily examine a plaintiff's efforts to correct the bankruptcy schedules and to make the bankruptcy court aware of any initially undisclosed claims." *Id.* at 486-487 (quotation marks and citations omitted).

There is no dispute that the claims asserted by plaintiffs in these two actions were not included in their bankruptcy petitions and that the bankruptcy court confirmed the plan without the claims being listed. Thus, the first two requirements of judicial estoppel are established. The question is whether the third requirement is satisfied in this case. In particular, the parties dispute whether plaintiffs "lacked knowledge of the factual basis of the undisclosed claims." *Id.* at 483.

Preliminarily, we agree with plaintiffs that the trial court's analysis is somewhat conclusory. Although the trial court issued a lengthy opinion, most of it merely summarizes the parties' arguments. The trial court concluded, without explanation, that plaintiffs' claims "occurred during the pendency of their bankruptcy case," and "[p]laintiffs did not lack knowledge of the factual basis of the undisclosed claims." The trial court did not make any findings regarding the dates of the relevant events or when plaintiffs became aware of their potential causes of action. Nonetheless, we review de novo the trial court's application of the doctrine of judicial estoppel. *Id.* at 479.

On appeal, plaintiffs refer to the relevant underlying events as the mishandling of their first cashier's check, which occurred in 2018, and their learning of defendant's interest miscalculations in 2018. Defendant, however, refers to numerous pages of plaintiff Saleem Shakoor's deposition testimony and argues that Shakoor admitted that plaintiffs' claims dated back to 2006 and 2010. To determine when plaintiffs had enough information to suggest a possible cause of action, it is necessary to consider each of plaintiffs' claims.

In the first action, plaintiffs sought a declaration that the attempted redemption was proper and that the foreclosure by advertisement was fraudulent. They further sought to enjoin delivery of the sheriff's deed to defendant on the basis of improprieties in the foreclosure by advertisement. The attempted redemption occurred in October 2019 and the foreclosure by advertisement occurred thereafter. However, these claims were based on the alleged discrepancy between the affidavit attached to the sheriff's deed (First Affidavit) and the affidavit to attach that was subsequently recorded (Second Affidavit), which in turn related to plaintiffs' allegation of improper interest calculations. Shakoor's testimony established that he believed, on the basis of oral promises, that plaintiffs were entitled to a fixed-rate mortgage in 2006, when construction of the home was complete. Shakoor, however, testified that defendant improperly increased the

interest rate to 8.4% in 2017 or 2018. According to their complaint in the second action, plaintiffs did not discover this until they hired an attorney to prosecute the first case.

Even assuming that plaintiffs did not discover the alleged miscalculation until 2018 or 2019, the events relating to the Loan Modification Agreement in 2011 establish that plaintiffs knew or should have known of their potential causes of action at that time. Although Shakoor believed that he was entitled to a fixed-rate mortgage after construction was complete, the 2011 Loan Modification Agreement provided for a variable interest rate. And while Shakoor testified that he did not see the first page of this document, he admitted that he signed the second page of the document. In an affidavit, Shakoor also averred that he signed the Loan Modification Agreement.[2] By signing the Loan Modification Agreement, plaintiffs should have known of defendant's alleged failure to modify the loan to a long-term fixed-rate mortgage. Thus, plaintiffs were aware of the events underlying their claims, and had enough information to suggest their potential causes of action in the first case, in at least 2011, before their bankruptcy action was filed in 2012.

Shakoor's deposition testimony provides further support for this conclusion. Shakoor testified that defendant initially did something wrong in 2006, when it failed to convert the construction loan to a traditional loan. He also testified that defendant did not do the proper paperwork in 2010 and 2011. Similarly, he testified that problems occurred relating to the foreclosure because of events in 2011. Consequently, plaintiffs had knowledge of the factual basis of their claims at issue in the first action.

In the second action, plaintiffs' claims for declaratory relief, injunctive relief, breach of contract, unjust enrichment, conversion, violations of the Real Estate Settlement Procedures Act (RESPA), 12 USC 2601 *et seq.*, intentional infliction of emotional distress, wrongful foreclosure, and punitive damages similarly related to defendant's alleged failure to adjust the interest rate, and thus were known by plaintiffs before they filed their bankruptcy petition in 2012. To the extent that plaintiffs' claims also relate to the failure to execute a formal loan agreement, this allegedly occurred in 2011. Further, with regard to the alleged RESPA violations, Shakoor expressly testified that those allegations related to the failure to provide a fixed-rate mortgage in 2008. Thus, all of the claims asserted in the second case also related to the allegation that, in 2011 or earlier, defendant failed to modify the loan to a fixed-rate mortgage. Accordingly, plaintiffs were aware of the events underlying their claims, and had enough information to suggest their potential causes of action in the second case, in at least 2011, before their bankruptcy action was filed in 2012.

---

[2] On appeal, plaintiffs also argue that the signature on behalf of the lender was forged. This argument was not raised until plaintiffs filed their motion for relief from judgment and was not addressed or decided by the trial court. It is therefore waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). In addition, we note that defendant asserts several other persuasive reasons why plaintiffs' forgery argument should not be considered, including (1) plaintiffs failed to disclose their handwriting expert in response to defendant's discovery requests, (2) plaintiffs never listed their handwriting expert on a witness list, and (3) plaintiffs acknowledged in discovery responses that Jean Kaman signed the Loan Modification Agreement.

The last two considerations of the third requirement—concealment and bad faith—are not addressed by the parties on appeal. Nonetheless, plaintiffs fail to overcome the presumption of a motive to conceal and there is no evidence that they attempted to inform the bankruptcy court of their potential causes of action. Therefore, the trial court did not err by finding that plaintiffs' omission did not result from mistake or inadvertence and properly granted summary disposition in favor of defendant on the basis of the doctrine of judicial estoppel.[3]

## III. ALTERNATIVE GROUNDS TO AFFIRM

Defendant asserts several alternative grounds to affirm the trial court's ruling.[4] We agree with defendant that the trial court's order granting summary disposition may also be affirmed on the alternative grounds that (1) plaintiffs failed to address the arguments raised in defendant's motions for summary disposition in their response and the only arguments raised by plaintiffs in their response lacked merit, (2) plaintiffs lack standing, and (3) plaintiffs' claims are waived. We disagree, however, with defendant that the doctrine of collateral estoppel applies to these cases.

## A. FAILURE TO ADDRESS ARGUMENTS

First, defendant argues that plaintiffs failed to address any of the arguments made in its motions for summary disposition, and only raised two arguments in their response to the motions, neither of which has merit. In their response, plaintiffs did not address any of defendant's arguments, and instead argued that the inaccurate figures in the Second Affidavit were caused by a mistake or irregularity in calculating interest that was sufficient to set aside the foreclosure sale. On appeal, plaintiffs similarly argue that they have established fraud or irregularity and prejudice sufficient to set aside the foreclosure sale.

To set aside a foreclosure by advertisement, a mortgagor must show fraud or irregularity in the foreclosure procedure, prejudice to the mortgagor, and a causal relationship. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 210-211; 859 NW2d 238 (2014). The fraud or irregularity alleged by plaintiffs related to the alleged mishandling of their first cashier's check and the alleged miscalculation of interest.

With regard to the handling of plaintiffs' first cashier's check, plaintiffs argued that they intended the funds to be applied to their second mortgage only, but defendant applied the funds to both mortgages in a manner inconsistent with plaintiffs' wishes and the January 4, 2018 letter. Preliminarily, this allegation was not the basis of any of plaintiffs' claims. Moreover, Shakoor admitted in his deposition that there was nothing in the loan documents that required defendant to

---

[3] Because the trial court correctly granted summary disposition on this basis, we need not address plaintiffs' remaining two arguments concerning justiciability and equity. Further, we need not address defendant's alternate grounds for affirmance but have nonetheless chosen to do so in the following section.

[4] "An appellee may urge an alternative ground for affirmance without filing a cross-appeal, but an appellee may not obtain a decision more favorable than that rendered below without filing a cross-appeal." *Barrow v Detroit Election Comm*, 305 Mich App 649, 683; 854 NW2d 489 (2014).

apply the proceeds in the manner plaintiffs wished. Plaintiffs also admitted that the funds were applied consistently with the letter. Even if an irregularity and prejudice could be shown, however, plaintiffs cannot establish causation because they asserted that "[r]egardless of how the proceeds of the Check were applied," they were unable to bring the accounts current.

As to the alleged interest miscalculations, plaintiffs never established that an incorrect interest rate was applied. All of the relevant loan documents and, in particular, the Loan Modification Agreement, provided for a variable interest rate. Furthermore, plaintiffs failed to present any evidence that they were charged an interest rate of 8.4%, as they alleged. In his deposition, Shakoor admitted that he did not have the letter that he claimed showed that he was charged approximately 8.5%. Moreover, to the extent that plaintiffs' claims were based on alleged verbal promises for a fixed interest rate, evidence of those statements was barred by the statute of frauds, which requires agreements regarding interests in land to be made in writing to be enforceable. MCL 566.106.

On appeal, plaintiffs primarily rely on the forensic accounting firm's Draft Report, which they allege showed that the Second Affidavit incorrectly stated the amount owed by approximately $1,000. Even if the Draft Report is properly considered on appeal, it did not conclude that an interest miscalculation occurred. Rather, it explained that the "small insignificant difference" between the amount of interest charged by defendant on their first mortgage and the amount actually owing "could be attributable to variety factors over such a substantial period of time, such as rounding, a fluctuating principal balance, the variable interest rate, irregular payments, and the daily or monthly approach to calculation of interest among the several banks that managed the account."[5]

In sum, plaintiffs failed to respond to defendant's arguments in their response to defendant's motions for summary disposition, and the only arguments set forth by plaintiffs lacked merit.

## B. STANDING

Defendant also argues that plaintiffs lack standing because the claims asserted in these actions are property of the bankruptcy estate. "The question whether a party has standing to bring a claim is reviewed de novo because it is a question of law." *Young v Indep Bank*, 294 Mich App 141, 143; 818 NW2d 406 (2011).

In *Young*, this Court explained:

A debtor loses all rights to his or her property when he or she files for bankruptcy. A party filing for bankruptcy must list all of his or her assets on the bankruptcy schedule, including all legal or equitable interests of the debtor in

---

[5] In a final argument, plaintiffs allege that defendant falsely stated that the loan was purchased from Fannie Mae. Plaintiffs did not raise this issue in the trial court, nor do they allege that they were prejudiced by the alleged error. According to the Draft Report, defendant admitted that the reference to Fannie Mae was an inadvertent mistake.

property as of the commencement of the case. It is well established that the interests of the debtor in property include causes of action. Moreover, the right to pursue causes of action formerly belonging to the debtor vests in the trustee for the benefit of the estate. The debtor has no standing to pursue such causes of action. The debtor can only bring suit on a vested asset if the trustee abandons it or the court gives permission.

A cause of action that is known about and filed before the filing of bankruptcy is an asset and properly belongs to the bankruptcy estate whether or not it was listed on the schedule. A cause of action is also an asset that properly belongs to the estate where a party has reason to know of the potential for the cause of action before the filing of bankruptcy and the suit is filed during the bankruptcy proceedings. [*Id.* at 143-144 (cleaned up).]

For the same reasons that the doctrine of judicial estoppel applies in this case, plaintiffs knew about their causes of action before they filed for bankruptcy and, therefore, plaintiffs lack standing.

## C. COLLATERAL ESTOPPEL

Next, defendant argues that plaintiffs are collaterally estopped from bringing these claims because they were decided in the bankruptcy action. Defendant did not raise this issue in the trial court and, therefore, we need not consider it. See *Walters*, 481 Mich at 387. Nonetheless, defendant fails to establish that this doctrine applies.

In *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006), this Court explained:

Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. The doctrine bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action. A decision is final when all appeals have been exhausted or when the time available for an appeal has passed. [Citations omitted.]

"The normal rules of . . . collateral estoppel apply to the decisions of bankruptcy courts." *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 692; 762 NW2d 529 (2008) (quotation marks and citation omitted).

Defendant argues that the bankruptcy court and district court orders are final and, in both cases, the court determined that defendant owns the property. However, even if the bankruptcy court determined that defendant owned the property, it did not specifically address the claims raised by plaintiffs in these actions because plaintiffs did not identify those claims in the bankruptcy proceedings. Accordingly, defendant fails to establish that the doctrine of collateral estoppel applies in this case.

## D. WAIVER

Defendant also argues that Paragraph 3 of the Loan Modification Agreement contains a waiver of plaintiffs' claims. Defendant raised this issue in the trial court, but the court did not address it. Paragraph 3 of the Loan Modification Agreement provides: "Borrower has no right of set off or counterclaim, or any defense to the obligation of the Note or security instrument." Plaintiffs signed this document, and we reject their claims that they did not see the first page and that the lender's signature was forged. Plaintiffs do not otherwise dispute that Paragraph 3 constituted a waiver of their claims. Thus, summary disposition also was proper on this basis.

## IV. SANCTIONS

Finally, defendant argues that plaintiffs and their attorneys should be assessed sanctions and costs for filing this vexatious and frivolous appeal. To obtain sanctions for the filing of a vexatious appeal, a defendant "must file a separate motion." *Barrow*, 305 Mich App at 683. In *Barrow*, this Court explained that, under MCR 7.211(C)(8), a request for sanctions set forth in an appellate brief does not constitute a motion under the court rule. *Id*. at 684. In this case, defendant indicated an intent to file a motion for sanctions, but has not yet filed such a motion with this Court. Therefore, we deny defendant's request for appellate sanctions without prejudice to the filing of a proper motion under MCR 7.211(C)(8).

## V. CONCLUSION

The trial court correctly granted summary disposition in favor of defendant. We affirm.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica