*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

LAVETA ANDERSON and CHARLES J.
TAUNT,

        Plaintiffs-Appellees,

v

JENNY SHIH, D.O., INOCENCIO CUESTA,
M.D., MALINI VENKATRAM, M.D., SUCHITA
BHEEMREDDY, M.D., UNIVERSITY
PHYSICIAN GROUP, VHS PHYSICIANS OF
MICHIGAN, HARPER-HUTZEL HOSPITAL,
LEGACY HHH, VHS HARPER-HUTZEL, INC.,
VHS OF MICHIGAN, INC., LEGACY DMC,
TENET HEALTHCARE CORPORATION,
BOTSFORD GENERAL HOSPITAL, and THE
WELLNESS PLAN,

        Defendants,

and,

KARTHIK YADAGIRI, PT, RUPA PATEL, PT,
THERAMATRIX, INC., doing business as
THERAMATRIX PHYSICAL
REHABILITATION, THERAMATRIX
PHYSICAL REHABILITATION,
THERAMATRIX PHYSICAL THERAPY
NETWORK, THERAMATRIX PHYSICAL
THERAPY PLAN, INC.,

        Defendants-Appellants.

UNPUBLISHED
April 23, 2020

No. 344540
Oakland Circuit Court
LC No. 2016-153143-NH

-1-

LAVETA ANDERSON and CHARLES J.
TAUNT,

        Plaintiffs-Appellees,

v

JENNY SHIH, D.O., INOCENCIO CUESTA,
M.D., MALINI VENKATRAM, M.D., SUCHITA
BHEEMREDDY, M.D., KARTHIK YADAGIRI,
PT, RUPA PATEL, PT, UNIVERSITY
PHYSICIAN GROUP, VHS PHYSICIANS OF
MICHIGAN, HARPER-HUTZEL HOSPITAL,
LEGACY HHH, VHS HARPER-HUTZEL, INC.,
VHS OF MICHIGAN, INC., LEGACY DMC,
TENET HEALTHCARE CORPORATION,
BOTSFORD GENERAL HOSPITAL,
THERAMATRIX, INC., doing business as
THERAMATRIX PHYSICAL
REHABILITATION, THERAMATRIX
PHYSICAL REHABILITATION,
THERAMATRIX PHYSICAL THERAPY
NETWORK, and THERAMATRIX PHYSICAL
THERAPY PLAN, INC.,

        Defendants,

and

THE WELLNESS PLAN,

        Defendant-Appellant.

No. 344549
Oakland Circuit Court
LC No. 2016-153143-NH

---

Before: SAWYER, P.J., and LETICA and REDFORD, JJ.

PER CURIAM.

      In Docket No. 344540, defendants, Karthik Yadagiri, Rupa Patel, Theramatrix, Inc., d/b/a Theramatrix Physical Rehabilitation, Theramatrix Physical Rehabilitation, Theramatrix Physical Therapy Network, and Theramatrix Physical Therapy Plan, Inc. (the "Theramatrix defendants") appeal the trial court's order denying their motion for summary disposition and granting a bankruptcy trustee's motion to be added as a party-plaintiff in this medical malpractice action. In Docket No. 344549, defendant, the Wellness Plan, appeals the same order. This Court initially denied defendants' applications for leave to appeal, but our Supreme Court, in lieu of granting leave, remanded the matters to this Court for consideration as on leave granted. *Anderson v Shih*,

-2-

503 Mich 956 (2019). Thereafter, this Court consolidated the two appeals.[1] For the reasons set forth below, we affirm.

## I. FACTUAL BACKGROUND AND PROCEEDINGS

Plaintiff, Laveta Anderson ("plaintiff"), alleged in her complaint that in the spring of 2013 she began experiencing pain in her knee, finger, shoulder, back, and pelvis. In June 2013, she sought medical treatment from her primary care physician, Dr. Jenny Shih, who diagnosed her with arthritis and referred her to Theramatrix Rehabilitation for physical therapy. The therapy did not resolve plaintiff's pain but exacerbated the condition. Between December 2013 and February 2014, plaintiff was referred to and evaluated by three rheumatologists, Dr. Malini Venkatram, Dr. Suchita Bheemreddy, and Dr. Inocencio Cuesta.

Meanwhile in the midst of seeking treatment for her medical issues, on February 25, 2014, plaintiff filed a petition seeking protection under Chapter 7 of the bankruptcy code. The bankruptcy court appointed Charles J. Taunt (trustee) as the trustee of plaintiff's bankruptcy estate.

On February 27, 2014, neurologist Dr. Robert Pierce evaluated plaintiff and ordered a spinal MRI which was performed on March 20, 2014. The results of the MRI indicated that plaintiff suffered from spinal cord compression due to disc herniation with abnormal cord signal and myelomalacia. The following day, on March 21, 2014, plaintiff underwent emergency spinal surgery, which included cervical disc decompression with fusion.

During her April 2, 2014 bankruptcy creditor's examination, plaintiff did not disclose any information regarding a possible medical malpractice claim against defendants. In fact, she responded "no" when asked whether she had any reason to believe that she was entitled to pursue a lawsuit against anyone. She also circled "no" on a questionnaire that inquired whether she believed that a doctor had committed malpractice during treatment. On June 6, 2014, the trustee filed a report indicating that plaintiff's bankruptcy estate had no assets to administer and on July 7, 2014, the bankruptcy court discharged plaintiff's debts and closed her bankruptcy case.

On September 18, 2014, plaintiff consulted an attorney about a possible medical malpractice claim against several medical professionals who allegedly failed to discover and treat her spinal condition. Plaintiff filed a notice of intent on May 29, 2015, and on November 30, 2015, plaintiff commenced this medical malpractice action against defendants. During her June 21, 2016 deposition, plaintiff testified that she had filed for bankruptcy protection and that her debts were discharged in 2014. Plaintiff explained that she later consulted an attorney because she felt that her doctors misdiagnosed her condition and that they were not serious about her well-being.

---

[1] The original application in Docket No. 344549 was filed on behalf of both the Wellness Plan and Jenny Shih, D.O. After the Supreme Court remanded the matter to this Court, the parties stipulated to dismiss Dr. Shih from the appeal.

On December 18, 2017, 18 months after defendants first learned of plaintiff's 2014 bankruptcy case, defendants Malini Venkatram and University Physician Group[2] moved for summary disposition on the ground that plaintiff's complaint should be dismissed because she lacked the capacity to sue since her medical malpractice action constituted property of her bankruptcy estate, and only the trustee in bankruptcy as representative of the estate had standing to file this suit. Alternatively, defendants argued that, because plaintiff failed to disclose her potential medical malpractice action as an asset in her Chapter 7 disclosures, the doctrine of judicial estoppel barred her from pursuing her claims. Several other defendants, including appellants herein, concurred in the summary disposition motion. Plaintiff opposed the motion on the ground that during her bankruptcy proceeding she did not have sufficient knowledge to alert her to a possible medical malpractice action. Plaintiff also argued that judicial estoppel did not bar her claim because she unintentionally failed to disclose a possible cause of action as the result of mistake or inadvertence.

Plaintiff's attorney advised the bankruptcy trustee on January 31, 2018, of plaintiff's medical malpractice action. That same day, the trustee obtained the bankruptcy court's permission to reopen plaintiff's Chapter 7 bankruptcy case. On February 1, 2018, the trustee filed a notice of withdrawal of Chapter 7 Trustee's Report of No Distribution and filed a Notice of Assets and Notice to Creditors. Then, on March 19, 2018, plaintiff filed in the bankruptcy court amendments to her bankruptcy schedules. In amended Schedule A/B, plaintiff identified an interest in a possible personal injury claim in the amount of $5,000,000. She amended her Schedule C to claim as exempt, among other things, the proceeds from a possible personal injury claim. On April 11, 2018, the bankruptcy court appointed plaintiff's attorney as the trustee's special counsel for purposes of pursuing and representing the trustee in plaintiff's medical malpractice action.

On May 16, 2018, the trustee moved to be added as a party-plaintiff in the medical malpractice action under the mandatory joinder rule, MCR 2.205(A). The trustee asserted that the estate's claims were not time-barred because they related back to the filing of plaintiff's complaint. Alternatively, the trustee argued that the discovery rule applicable to medical malpractice claims rendered his claims timely because he did not discover a possible cause of action until January 2018. In their response, the Theramatrix defendants argued that the addition of a new party did not relate back to the filing of the complaint, and therefore, the trustee's claims were time-barred.

The trial court granted the trustee's motion to enforce mandatory joinder and denied defendants' motions for summary disposition. Thereafter, these appeals ensued.

## II. STANDARDS OF REVIEW

Defendants moved for summary disposition under MCR 2.116(C)(5), (7), and (10). We review de novo a trial court's decision on a motion for summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). We review the entire record to determine whether the moving party was entitled to summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Whether a party has standing is a legal question that we also

---

[2] On October 10, 2018, the parties stipulated to dismiss defendants Dr. Venkatram and University Physician Group.

review de novo. *Barclae v Zarb*, 300 Mich App 455, 467; 834 NW2d 100 (2013). A party may assert that a plaintiff lacks standing and the legal capacity to sue by summary disposition motion under MCR 2.116(C)(5). See *Pontiac Police & Fire Retiree v Pontiac No 2*, 309 Mich App 611, 619; 873 N.W.2d 783 (2015). To preserve a motion under MCR 2.116(C)(5), "a party must raise the issue in its first responsive pleading or in a motion filed prior to that pleading." *Id*. (quotation marks and citations omitted). In reviewing a motion under MCR 2.116(C)(5), we must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 493; 815 NW2d 132 (2012).

MCR 2.116(C)(7) "permits summary disposition where the claim is barred by an applicable statute of limitations." *Nuculovic v Hill,* 287 Mich App 58, 61; 783 NW2d 124 (2010). When addressing such a motion, a trial court must accept as true the allegations of the complaint unless contradicted by the parties' documentary submissions. *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994). Although not required to do so, a party moving for summary disposition under MCR 2.116(C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider. *Maiden*, 461 Mich at 119. If no material facts are disputed, whether a plaintiff's claim is barred by the applicable statute of limitations is a question of law for the court to determine. *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010).

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004) (citation omitted).

## III.  ANALYSIS

### A.  CAPACITY TO SUE

Defendants argue that the trial court erred by not granting them summary disposition because at the time plaintiff filed her complaint she lacked the legal capacity to sue since her claim belonged to her bankruptcy estate and only the trustee had standing to bring the medical malpractice claim. We disagree.

"When a debtor files a Chapter 7 bankruptcy petition, all of the debtor's assets become property of the bankruptcy estate, see 11 USC § 541, subject to the debtor's right to reclaim certain property as 'exempt,' § 522(l)." *Schwab v Reilly*, 560 US 770, 774; 130 S Ct 2652; 177 L Ed 2d 234 (2010). A potential cause of action constitutes an asset that must be included in the schedule of assets and liabilities. *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 481-482; 822 NW2d 239 (2012). Because potential causes of action belong to the bankruptcy estate, the debtor loses standing to pursue such claims and the right to pursue the cause of action is vested in the trustee for the benefit of the estate. *Young v Indep Bank,* 294 Mich App 141, 144; 818 NW2d 406 (2011). However, there are exceptions to this general rule. A debtor may commence suit on a potential cause of action that existed before or during the life of the bankruptcy with permission from the bankruptcy court or if the trustee abandons the cause of action. *Id.* at 144. Further, under § 522

of the bankruptcy code, 11 USC 522, a debtor is permitted to exempt certain types of property from the estate, which would enable the debtor to retain the property exempted postbankruptcy. *Schwab*, 560 US at 774-776.

In this case, after defendants filed their motions for summary disposition, the trustee moved to reopen the bankruptcy case. Thereafter, on March 19, 2018, plaintiff amended her property schedule to include as an asset her personal injury claim related to her medical malpractice action against defendants. Plaintiff claimed as exempt the potential proceeds from the action as permitted under provisions of 11 USC 522(d). Since that filing, the trustee has not objected to the claimed exemption and has indicated that he does not intend to object to the exemption. In his motion for joinder filed in the trial court, the trustee stated that he "readily admits that [plaintiff] is entitled to an exemption for this litigation." Moreover, a stipulation entered in the bankruptcy action extending the trustee's time to object to the exemption explains that "[s]uch an extension is necessary so that an allocation of damages can be ascertained in order to determine the extent of [Ms. Anderson's] allowable exemption." The validity of the claimed exemption in the bankruptcy court is not at issue.

Because plaintiff has claimed an exemption to the proceeds of a possible personal injury claim, she is a real party in interest and possesses the capacity to bring her medical malpractice claims. This conclusion is supported by *Szyszlo v Akowitz*, 296 Mich App 40; 818 NW2d 424 (2012), a case in which the plaintiff claimed that he was rendered cortically blind after a surgery on April 11, 2006. About three months after the surgery, in July 2006, the plaintiff filed a bankruptcy petition. Then, in September 2006, the petition was amended to add a potential medical malpractice claim as an asset and the plaintiff listed his claim for personal injury from medical malpractice as an exemption. *Id*. at 44-45. In April 2008, the bankruptcy trustee filed a report indicating that no property was available for distribution and that the bankruptcy estate had been fully administered resulting in the bankruptcy court closing the bankruptcy case. *Id*. at 45. On October 3, 2008, one week before the expiration of the limitations period for the medical malpractice claim, the plaintiff filed his malpractice complaint. *Id.*

In April 2010, the defendants in *Szyszlo* moved for summary disposition on the ground that the plaintiff lacked legal capacity to bring the medical malpractice claim. As in this case, the defendants argued that the trustee of the plaintiff's bankruptcy estate solely held an interest in the malpractice claim. *Id*. at 46. The trial court granted the motion, but this Court reversed, concluding that at the time the plaintiff filed suit, he was the real party in interest. *Id*. at 47. Citing federal precedent, this Court acknowledged that until and unless the trustee abandoned the estate's interest in the lawsuit, any amounts recovered in the lawsuit above the amount of the statutory exemption would flow to the bankruptcy estate. *Id*. at 49, citing *Wissman v Pittsburgh Nat'l Bank*, 942 F2d 867, 872 (CA 4, 1991). However, this interest by the trustee did not eliminate the debtor's interest in the lawsuit because "the statutory exemption to which the plaintiff was entitled, '*represents a present, substantial interest and provides the necessary standing for them to pursue the action.*' " *Id*. at 49, citing *Wissman*, 942 F2d at 872 (emphasis in original). This Court explained that, "having an undisputed exemption for the potential lawsuit, plaintiff had standing and was a proper party to bring this suit." *Id*. at 50.

Applying the foregoing analysis to the case at bar, because plaintiff claimed an undisputed exemption to the proceeds from her medical malpractice action, the trial court correctly concluded

that plaintiff had the capacity to bring this suit. Further, consistent with the holding in *Szyszlo*, any funds recovered in the medical malpractice action in excess of the sum of the administrative fees, exemptions, and the debt owed by the estate to creditors, remain plaintiff's property. *Id*. Therefore, the trial court did not err by denying defendants' motions for summary disposition on the ground that plaintiff lacked standing to sue. Because we conclude that plaintiff had the legal capacity and standing to sue in this case, we find it unnecessary and decline to address plaintiff's argument that defendants waived their argument in this regard.

Defendants tacitly admit that *Szyszlo* supports the proposition that claimed exemptions in a bankruptcy case establish the debtor's standing. They assert, however, that standing is only conferred if the exemptions are claimed before filing the state court complaint. Thus, defendants argue that the present case is factually distinguishable from *Szyszlo*. Specifically, defendants note that in *Szyszlo*, the plaintiff claimed his amended exemption before expiration of the limitations period for his medical malpractice action. Defendants further observe that in this case, when plaintiff claimed her exemption in the bankruptcy court in March 2018, the limitations period on her malpractice claim had expired. The distinction on which defendants rely, however, does not render the holding in *Szyszlo* inapplicable, nor does it warrant a different result.

Plaintiff asserts that even if we interpret *Szyszlo* as requiring that the bankruptcy exemption be claimed before the expiration of the limitations period on her medical malpractice claim, that requirement has been met. Plaintiff argues that she did in fact claim an exemption before the limitations period expired. Plaintiff relies on the tolling provisions of MCL 600.5856(a), which provides that the statutory limitations period is tolled at the time a complaint is filed if a copy of the summons and complaint are timely served on the defendants. We find it unnecessary to engage in the tolling analysis proffered by plaintiff because the amendment of plaintiff's bankruptcy disclosure and exemptions related back to the filing of the bankruptcy petition.

Under the Bankruptcy Code, a debtor may amend schedules "without limitation of whether the case is open or reopened after closing." *In re Muscato*, 582 BR 599, 602 (Bankr WD New York, 2018) (quotation marks and citations omitted). In this case, after the trustee moved to reopen the bankruptcy case, plaintiff amended the requisite schedules to disclose and exempt her interest in a possible personal injury claim. Moreover, these amendments related back to the filing of the bankruptcy petition on February 25, 2014. In *In re Hale*, 511 BR 870, 879 (Bankr WD Mich, 2014), the court held that "[w]hen a debtor amends an exemption, it relates back to the bankruptcy case filing date." Similarly, in *In re OBrien,* 443 BR 117, 131 (Bankr WD Mich, 2011), the court held that "[w]hether an exemption is claimed at the beginning of the case or whether an exemption is claimed later in the case by amendment, the exemption is determined as of the filing date. Regardless of when an exemption is subsequently claimed by a debtor in the case, it must relate back." Applying these principles, plaintiff's exemption related back to the filing date of the bankruptcy petition which occurred before the expiration of the limitations period for her medical malpractice claims against defendants. Accordingly, the trial court did not err when it denied defendants' motions for summary disposition. The court correctly concluded that plaintiff possessed the legal capacity to bring her medical malpractice claims against defendants.

## B.  JUDICIAL ESTOPPEL

Next, defendants assert that the trial court erred by concluding that the judicial estoppel doctrine did not bar plaintiff's medical malpractice claims.  We disagree because the doctrine does not apply to the circumstances in this case.

"Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *Spohn*, 296 Mich App at 479 (quotation marks and citations omitted).  The doctrine is invoked "to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship."  *Id*. at 479-480 (quotation marks and citations omitted).  In *Opland v Kiesgan,* 234 Mich App 352, 363-364: 594 NW2d 505 (1999), this Court explained that the judicial estoppel doctrine is to be applied with caution and serves to prevent litigants from deliberate manipulation of the courts by arguing opposing positions "to suit an exigency of the moment."  *Id*. at 364 (citations omitted).  Further, "[j]udicial estoppel is an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice."  *Id.* (quotation marks and citations omitted).

In *Spohn*, this Court explained the application of the doctrine in the context of bankruptcy proceedings:

> [T]o support a finding of judicial estoppel, [a reviewing court] must find that: (1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence.  [*Spohn,* 296 Mich App at 480-481 (citations omitted).]

In *Spohn*, the plaintiff's underlying claims were related to alleged workplace sexual harassment occurring during the last four months of 2008.  *Id*. at 472.  In November 2008, the plaintiff filed for protection under Chapter 13 of the bankruptcy code.  The plaintiff's proposed Chapter 13 plan filed in December 2008 did not refer to her potential sexual harassment lawsuit.  *Id.*  Although the trustee objected to the bankruptcy plan, the bankruptcy court ultimately confirmed the plan in February 2009.  *Id.* at 474.  Because the plaintiff failed to make payments in accordance with the bankruptcy plan, the trustee moved to dismiss the plaintiff's petition on August 2009.  In September 2009, plaintiff sued the defendants in state court.  The bankruptcy court dismissed the plaintiff's petition in March 2010.  *Id*. at 474.  During August 2010, the defendants in her sexual harassment case moved for summary disposition on the ground that the plaintiff was judicially estopped from pursuing her claim because of her failure to include the potential lawsuit as an asset in her bankruptcy proceeding.  The defendants reasoned that the plaintiff's omission established that she asserted a contrary position in the circuit court from that assumed in the bankruptcy court.  In response, the plaintiff asserted that on the date of filing her bankruptcy petition, she had no reason to believe that she had a viable sexual harassment claim.  She further argued that based on her inability to pay pursuant to the plan, her petition would be dismissed, thereby obviating the need for an amendment or disclosure.  The plaintiff also asserted that the failure to disclose the potential lawsuit constituted mistake or inadvertence because she

had no motive to conceal. Ultimately, the trial court granted summary disposition based on the judicial estoppel doctrine. On appeal, this Court affirmed. *Id.* at 472.

This Court first considered whether the plaintiff assumed a position that was contrary to the one she asserted under oath in the bankruptcy proceeding. In resolving this inquiry in the affirmative, this Court noted that the plaintiff "did not include her potential sexual harassment lawsuit on her bankruptcy petition and did not amend that petition to list the possible cause of action while the bankruptcy remained pending." *Id.* at 481. Indeed, this Court twice noted that the plaintiff did not seek to amend the petition. *Id.* at 482.

We find this case distinguishable from *Spohn*. Here, it is undisputed that plaintiff neglected to include her potential malpractice claim in her original petition. Such an oversight would be a position contrary to the position that she has taken in the current case. Unlike *Spohn*, however, plaintiff took corrective measures. On January 31, 2018, plaintiff's counsel contacted the trustee, advised him of the malpractice claim, and then, on that same day, the trustee moved the bankruptcy court to reopen plaintiff's bankruptcy case. Plaintiff then amended her bankruptcy schedules to include the possible personal injury claim as an asset. The bankruptcy court accepted the amendment. As a result, plaintiff complied with her responsibilities under the bankruptcy code, and by the amendment corrected her otherwise contrary position. Moreover, in light of the amended filings and the fact that the bankruptcy matter remains pending, the bankruptcy court has not adopted "the contrary position." Accordingly, defendants cannot establish the first and second requirements for the application of judicial estoppel.

The record also indicates that plaintiff's failure to disclose the potential asset in the bankruptcy court arose from mistake or inadvertence and did not arise from some ulterior motive to deliberately manipulate the courts through cynical gamesmanship to achieve success on one position in the bankruptcy court and then argue a different position to gain advantage in this case. In this regard, this Court in *Spohn* explained:

> In determining whether [the plaintiff's] conduct resulted from mistake or inadvertence, [the reviewing] court considers whether: (1) [the plaintiff] lacked knowledge of the factual basis of the undisclosed claims; (2) [the plaintiff] had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, [the reviewing court] will look, in particular, at [the plaintiff's] "attempts" to advise the bankruptcy court of [the plaintiff's] omitted claim. [*Spohn,* 296 Mich App at 480-481 (citations omitted).]

In *Spohn* this Court noted that, based on the plaintiff's own allegations and admissions, the events comprising her sexual harassment claim occurred primarily in September 2008 through early December 2008. The plaintiff filed her bankruptcy petition on November 28, 2008. The plaintiff last worked on January 6, 2009. On that same day, the plaintiff and her husband discussed her potential sexual harassment lawsuit with an attorney. *Id.* at 484. Given these facts, this Court concluded that the plaintiff could not legitimately dispute her awareness and knowledge of her undisclosed claim. *Id.* Nevertheless, she took no action to inform the bankruptcy court. This Court explained that a "debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may

have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Id.* at 484 (citation omitted).

By contrast, the record in this case establishes that plaintiff treated with defendants between June 2013 and February 2014. She filed her bankruptcy petition on February 25, 2014, about one month before she sought treatment from another care provider who ordered an MRI that revealed her severe spine condition that required emergency surgery the next day. Plaintiff's bankruptcy case closed in July 2014. Plaintiff first consulted with an attorney in September 2014. The record reflects that, at the earliest, plaintiff learned of her medical care providers' misdiagnosis when she learned the results of her MRI after the filing of the bankruptcy petition. The trial court correctly found that at the time that plaintiff initially filed her bankruptcy petition, she lacked knowledge of her potential claim.

Whether a plaintiff had a motive to conceal is also relevant when considering if a plaintiff's omission constituted mistake or inadvertence. A finding of bad faith is likewise relevant. *Spohn,* 296 Mich App at 485-488. Regarding these two inquiries, the Court in *Spohn* again considered whether the plaintiff ever attempted to advise the bankruptcy court of the omitted claim. *Id.* at 485, 486-487. In *Spohn*, the plaintiff made no attempt to advise the bankruptcy court of her potential sexual harassment lawsuit, nor did she attempt to amend her bankruptcy petition or schedules. This Court found that such omissions supported a finding that the plaintiff acted in bad faith. *Id.* at 487.

In this case by contrast, plaintiff contacted the trustee, advised him of her claims, and after the bankruptcy court reopened her bankruptcy case, plaintiff amended her filings. The facts and circumstances of this case do not permit the conclusion that plaintiff concealed her claim or acted in bad faith. Therefore, the trial court did not clearly err when it found an absence of bad faith.

Finally, declining to apply the doctrine of judicial estoppel under the circumstances of this case advances the general purpose of the doctrine. If plaintiff is allowed to proceed with her medical malpractice action, there is no danger of inconsistent rulings considering the fact that the bankruptcy matter has been reopened and remains pending, to the potential benefit of her creditors should she prevail, because plaintiff identified her malpractice claim as a potential asset of her bankruptcy estate. Further, application of the doctrine is not necessary to avoid a miscarriage of justice. Plaintiff's failure to disclose her potential claim in the bankruptcy court placed her creditors, not the present defendants, in jeopardy. In this regard, the bankruptcy court is equipped to address the consequences of a debtor's omissions. Moreover, application of judicial estoppel in this case has the potential of causing a miscarriage of justice by preventing plaintiff from pursuing her claim to the detriment of her creditors. If plaintiff prevails in her medical malpractice claim, a portion of the proceeds would be eligible for disbursement to her creditors. If the judicial estoppel doctrine were applied in this case and plaintiff's claims dismissed, plaintiff's creditors would be deprived of recovery of some of the amounts owed by plaintiff. Therefore, because defendants cannot establish the requirements necessary for application of the judicial estoppel doctrine, and application of the doctrine under the circumstances of this case would not further the doctrine's purpose, we conclude that the trial court did not err by denying defendants summary disposition on judicial-estoppel grounds.

## C.  JOINDER OF THE TRUSTEE

Defendants challenge the trial court's decision to grant the trustee's May 2018 motion under MCR 2.205 to be joined as a plaintiff to this action.  We find no error.

We review for an abuse of discretion a trial court's decision regarding joinder.  *Mason Co v Dep't of Community Health*, 293 Mich App 462, 489; 820 NW2d 192 (2011).  However, whether the relation-back doctrine is applicable is a question of law that we review de novo.  *Local Emergency Fin Assistance Loan Bd v Blackwell,* 299 Mich App 727, 740-741; 832 NW2d 401 (2013).

MCR 2.205(A), governs necessary joinder of parties and provides:

> Subject to the provisions of subrule (B) and MCR 3.501, persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties and aligned as plaintiffs or defendants in accordance with their respective interests.

The trial court found that the trustee had an interest in the subject matter of the action and that his presence in the action was essential to permit the court to render complete relief.  The trial court further found that the statute of limitations did not bar the trustee's claims because the addition of the trustee as a party related back to the original filing of the complaint.  Consequently, the trial court granted the trustee's motion.  In doing so, the court rejected defendants' contention that allowing the trustee to join the litigation would be futile because the trustee's claims were not pursued within the statutory limitations period.

The bankruptcy code provides that the property of the bankruptcy estate consists of "all legal or equitable interests of the debtor in property."  11 USC 541(a)(1).  Property of the estate specifically includes causes of action that have accrued before the filing of the petition.  *Spohn,* 296 Mich App at 481-482.  The trustee of plaintiff's bankruptcy estate, therefore, has an interest in plaintiff's medical malpractice claim.  The parties did not dispute that the trustee has an interest in plaintiff's medical malpractice claim.  Defendants, however, argue that the trustee should have been denied permission to join the case because the statutory limitations period had expired barring its claimed interest.  We disagree because the trial court correctly held that the trustee's claims related back to the filing of the original complaint.

"The doctrine of 'relation back' was devised by the courts to associate the amended matter with the date of the original pleading, so that it would not be barred by the statute of limitations."  *LaBar v Cooper*, 376 Mich 401, 405; 137 NW2d 136 (1965) (citation omitted).  In general, "the relation-back doctrine does not extend to the addition of new parties."  *Miller v Chapman Contracting,* 477 Mich 102; 730 NW2d 462 (2007) (quotation marks and citations omitted).  However, both before and after the Supreme Court's *Miller* decision, this Court recognized an exception to the general rule.  In *Hayes-Albion Corp v Whiting Corp*, 184 Mich App 410, 418; 459 NW2d 47 (1990), this Court explained that under certain circumstances, the relation-back doctrine extends to newly added parties, stating:

> [W]e find that where the original plaintiff had, in any capacity, an interest in the subject matter of the controversy, the defendant had notice of the interest of the

-11-

person sought to be added as a plaintiff, and the new plaintiff's claim arises out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, then a new plaintiff may be added and the defendant is not permitted to invoke a limitations defense.

More than 20 years later, in *Local Emergency*, 299 Mich App at 741-742, this Court confirmed the validity of the exception articulated in *Hayes-Albion*. This Court affirmed the trial court's holding that the relation-back doctrine applied and that the defendant could not invoke a statute-of-limitations defense and explained:

> In this case, as the trial court recognized, the original plaintiff—the Board— had an interest in the subject matter of the litigation. The claims of the added plaintiff—the Attorney General—were identical to those of the Board and arose out of the same conduct set forth in the original complaint. Both plaintiffs represented the interests of the state, and defendant was fully aware of the Attorney General's interest given that the Attorney General filed the original complaint against defendant. In addition, there is no question that defendant was fully apprised of the claims against him and was prepared to defend against them. Further, as the trial court determined when it granted the Board's motion to amend the complaint and as we have concluded in this appeal, defendant was not prejudiced by the addition of the Attorney General as a party. [*Id*.]

The same fundamental principles apply in this case. Plaintiff and the trustee both have an interest in this medical malpractice action. Plaintiff seeks recompense for her personal injury arising from defendants' alleged malpractice. The trustee has an interest in any recovery plaintiff may obtain to potentially pay plaintiff's creditors. Plaintiff has a claimed exemption under which she may be entitled to any surplus from her recovery on her claims in this action. Plaintiff's and the trustee's interests are essentially identical, having arisen from the same transactions and occurrences of medical malpractice set out in the original complaint. Defendants knew of the trustee's interest as early as June 21, 2016, when plaintiff testified in her deposition regarding her bankruptcy. At the time the trustee moved for joinder, defendants had known of his possible claims for approximately two years. Further, defendants had knowledge of and were prepared to defend the trustee's claims because they had been defending plaintiff's claims for two years. Notably, the record indicates that, because of plaintiff's alignment of interests with the trustee's, the bankruptcy court appointed plaintiff's counsel as special counsel to represent the trustee in this action. Under the circumstances of this case, defendants cannot establish any prejudice as a result of the trustee's joinder in this litigation. Accordingly, the trial court did not err by allowing the trustee to join in this matter. Nor did it err by ruling that defendants' statute-of-limitations defense lacks merit.

Defendants challenge in particular the trial court's ruling that they had notice of the trustee's interests. They argue that, under *Hayes-Albion*, it must be shown that they had notice of the trustee's interest *before the expiration of the limitations period*. They then argue that because they only learned of the trustee's interest during the June 2016 deposition, allegedly more than two years after plaintiff's medical malpractice claim accrued, this requirement has not been satisfied. We disagree because defendants attempt to rely on an additional requirement not contemplated by this Court's published decisions.

In *Hayes-Albion*, although this Court observed that a trial court should consider whether the defendant had notice within the statutory period of the added plaintiff's claims, *id*. at 417, this Court clarified that of greater concern is whether the defendant had knowledge of the transactional base of the claim, as timely pleaded by the original plaintiff. The Court's ultimate concern was whether the defendant would be prepared to defend the claims. Moreover, when setting forth its holding, this Court did not specify such a requirement but established that joinder is appropriate if "the defendant had notice of the interest of the person sought to be added as a plaintiff." *Id*. at 418. This holding is consistent with the Court's concern that a defendant not be prejudiced by the addition of a new plaintiff. In this case, the trustee does not have and has not asserted independent claims against defendants. Rather, the trustee's interests are essentially identical to plaintiffs and rest solely on plaintiff's claims of which defendants have been aware of and defended against since the inception of this case.

We also note that in *Local Emergency,* a more recent decision, this Court did not require that the defendant have notice within the statutory period. Indeed, when this Court revisited the relation-back doctrine and considered the holding in *Hayes-Albion*, it considered that portion of *Hayes-Albion* that required a showing that "the defendant had notice of the interest of the person sought to be added as a plaintiff." *Local Emergency*, 299 Mich App at 741.

Notwithstanding the foregoing analysis, defendants argue that our Supreme Court's decision in *Miller* controls and compels a conclusion that the trustee's claims do not relate back to the filing of plaintiff's original complaint. *Miller*, however, is distinguishable.

In *Miller*, 477 Mich at 104, the original plaintiff suffered personal injury in a motor vehicle accident in 2000. In March 2002, the plaintiff petitioned for protection under Chapter 7 of the bankruptcy code. The defendants sought summary disposition contending that the plaintiff lacked real party in interest status and lacked standing to sue. The defendants argued that all of the plaintiff's rights regarding the 2000 accident were transferred to the bankruptcy trustee and the trustee was the sole party who could pursue the lawsuit. *Id*. In response, the plaintiff moved for leave to amend the complaint under MCR 2.118 to correct the "misidentification" of the named plaintiff to substitute the bankruptcy trustee as the named plaintiff. *Id*. at 104-105. The trial court denied plaintiff's motion and dismissed the lawsuit. On appeal, this Court affirmed.

In *Miller*, our Supreme Court adopted this Court's opinion and affirmed this Court's decision that the bankruptcy trustee, not the plaintiff, was the real party in interest and that the plaintiff's motion sought to add a party and not merely correct a misnomer. *Id*. at 104-105. It further approved this Court's analysis regarding the relation-back doctrine respecting amendments of claims and defenses under MCR 2.118, and affirmed this Court's conclusion that the relation-back doctrine and the misnomer doctrine do not apply to the addition of new parties or the substitution of a wholly new and different party to the proceedings. *Id*. at 106-107.

This case is distinguishable from *Miller* because there the bankruptcy trustee constituted the only party with an interest in the underlying matter. Unlike here, the plaintiff in *Miller* had not preserved an interest in the proceeds of the automobile negligence action through a claimed exemption. Thus, the analyses employed by this Court in both *Hayes-Albion* and *Local Emergency* were not warranted by the facts presented in *Miller.* By contrast, as explained herein, both plaintiff

-13-

and the trustee have independent standing to pursue the medical malpractice action. This factual distinction renders *Miller* inapposite.

Finally, we find merit to the trustee's alternative argument that because his motion was filed within six months of discovery of his potential cause of action, his claims are not time-barred. In a medical malpractice action, an individual normally has two years from the time a claim accrues to commence suit. MCL 600.5805(8). A claim based on medical malpractice "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838a(1). However, the limitations period is subject to a six-month "discovery rule." MCL 600.5838a(2) provides, in pertinent part:

> Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section [MCL 600.5805] or sections [MCL 600.5851 to 600.5856], or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. However, except as otherwise provided in section 5851(7) or (8), the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition, or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim is on the plaintiff. A medical malpractice action that is not commenced within the time prescribed by this subsection is barred.

In this case, it is undisputed that the trustee did not learn of the medical malpractice action, or any facts related thereto, until he was contacted by plaintiff's attorney on January 31, 2018. After learning of the matter, the trustee immediately moved to reopen the bankruptcy matter. Then, on May 16, 2018, well within six months of learning of the cause of action, the trustee filed his motion to enforce joinder.

Defendants argue that the discovery rule in medical malpractice actions only applies to the knowledge of a plaintiff-patient injured or damaged by the medical treatment. Nothing in the plain language of the statute limits its application so narrowly. "The goal of statutory interpretation is to discern and give effect to the intent of the Legislature." *Barclae*, 300 Mich App at 466 (citation omitted). The first step in this process is to review the statutory language. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich,* 492 Mich 503, 515; 821 NW2d 117 (2012). "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Id.* (quotation marks and citations omitted). "If the statutory language is unambiguous, then the Legislature's intent is clear

-14-

and judicial construction is neither necessary nor permitted." *Barclae*, 300 Mich App at 466-467. The plain language of the statute does not endorse defendants' interpretation.

Affirmed.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ James Robert Redford